# THE MICHIGAN NISI PRIUS.

## JULY, 1870.

### THE PEOPLE VS. GEO. VANDERPOOL.

By statute, "the court in which the trial of any indictment shall be had, may, at the same term, or at the next term thereafter, on motion in writing of the defendant, grant a new trial for any cause which, by law, a new trial may be granted, or when it shall appear to the Court that justice has not been done, and on such terms or conditions as the Court shall direct;" and a Court cannot, by passing sentence, a proceeding wholly *in invitum*, so far as the respondent is concerned, deprive him of his right under this statute, of coming into Court and moving for a new trial and presenting and urging his reasons therefor, at any time before the end of the term next succeeding the term at which the respondent was convicted.

The actual presence of a defendant in Court is not necessary in order that his motion for a new trial may be entertained.

Cumulative evidence is such as tends to prove the same fact which was before attempted to be proved. Evidence offered not of the same fact, but of a different fact with the same logical bearing, held not to be cumulative.

A new trial will sometimes be granted on cumulative evidence if such evidence will make a doubtful case clear.

A person is not qualified to sit as a juror, in the Circuit Court, unless his name appear on the assessment roll for the same year. The provision of the statute is inexorable and cannot, in a criminal case, be ignored by the people or waived by the defendant.

*By the Court*, RAMSDELL, J.—

The defendant in the above cause, having been tried and convicted, at the last term of this Court, for the murder of Herbert Field, on the 5th day of September last, and having been sentenced by the Court upon that conviction, to solitary confinement at hard labor in the State Prison for life, which sentence is now in process of execution, and two days in the term at which he was convicted not having elapsed between the rendering of the verdict of conviction and the final adjournment of said Court, Ramsdell & Benedict and S. W. Fowler, his attorneys, and John Van Arman, of counsel, came into Court and made and entered, in writing, the following motion viz.:

The People *vs.* George Vanderpool. The defendant comes and moves the Court to set aside the verdict of the jury rendered in this case, and vacate and annul the Judgment pronounced therein and to grant to this defendant a new trial on the following grounds and for the following reasons:

1. That said verdict is against the evidence and the law applicable to the same.

2. That since the termination of said trial the defendant has discovered new and material evidence and testimony, which was unknown to the defendant or his counsel at the time of said trial.

3. That the defendant and his counsel were surprised and disappointed upon the trial by the failure and refusal of George D. Pibbs to testify as he had previously stated to the counsel for defendant, he would testify.

4. That the defendant was disappointed by the unexpected absence of, and his inability to procure the attendance of, several witnesses whose testimony was material and necessary for the defendant.

5. That improper and illegal means were resorted to and employed to' influence the minds of the jurors against the defendant, to-wit: a placard was put upon the door of the Court room and a diagram upon the wall of the court room, both of them in such a position as to be seen by the jury, and both of them calculated and intended to convey to the minds of the jury ideas and impressions unfavorable to the defendant.

6. That the officers in charge of the jury disregarded the instructions of the court to keep the jury separate from all intercourse or communication with other persons nor to allow any one to associate or converse with them, but various persons actually did meet and converse with different members of said jury while they were impanneled to try said cause and while they were in charge of the officers.

7. That four of the persons impanneled and who were sworn and actually composed said jury were destitute of one of the qualifications of a juror as prescribed by law, to-wit: Their

names were not on any assessment roll of any township or city ward in the said county for the year 1869.

8. That one of the jurors who composed the jury which tried said cause had previously expressed an opinion upon the merits of said cause, unfavorable to defendant:

Which grounds are supported by affidavits filed in this case.

To this motion the people, by Thomas B. Church, Esq., their counsel, interpose objections to the reception or hearing of the motion by this Court, for the following reasons, viz.:

1. Because the right of the respondent to make or to have made said motion is lost; the said respondent having waived and abandoned the same, by not interposing the same between the verdict of the jury and the sentence of the Court.

2. Said motion to be heard requires the personal attendance of the respondant in Court, where he now is not; being confined in the State Prison at Jackson, as will be seen from the records and files of the Court, to-wit: By the sentence imposed on said respondent, and the receipt for the body of said respondent, by the Superintendent of said State Prison.

These objections to the motion of the respondent are filed in the nature of a special demurrer to the jurisdiction of this Court, and must be first considered. Upon these objections three questions arise:

1. Has this Court the right to grant a new trial in any case of felony after sentence?

2. Has the Court a right to entertain a motion for a new trial in a case of felony without the actual presence of the body of the defendant in Court?

3. Has the defendant waived any of his rights by not interposing his motion for a new trial before the sentence was pronounced?

Whether the Circuit Courts of this State have the power, independent of any statutory provisions, by virtue of their authority as the highest tribunal known to the laws of the State, for the investigation and finding of facts in issue in a case at law, to arrest its own judgment and annul its own sentences,

where those judgments or sentences are the results of its own errors, either in the application of the law or in the finding of the facts ; or where it is manifest and clear that injustice would result from its own adjudications, it is not necessary in this instance to discuss. Section 6,082 of the Compiled Laws, covers the whole question of jurisdiction raised by these objections. and reads as follows: " The court in which the trial of any indictment shall be had, may, at the same term, or at the next term thereafter, on the motion in writing of the defendant. grant a new trial for any cause for which by law a new trial may be granted, or when it shall appear to the court that justice has not been done, and on such terms or conditions as the court shall direct." A court cannot by any action of its own in passing sentence, a proceeding wholly *in invitum* so far as the respondent is concerned, deprive him of his right under his statute, of coming into court and moving for a new trial, and presenting and urging his reasons therefore. The statute gives the defendant until the end of the next succeeding erm to make his motion, and it makes no exception for any contingency whatever.

The Supreme Court in the case of *The People vs. The Judge of Wayne Circuit* have decided that a circuit judge in his discretion might hear a motion for a new trial notwithstanding it was not made or entered within the time prescribed in the rules, and that, too, after a bill of exceptions has been settled and a writ of error sued out.

In cases of murder in the first degree the statute prescribes the sentence which the court shall pronounce, but leaves the time when it shall be passed entirely to the discretion of the court. Suppose then that the defendant is found guilty, and the Judge. in the exercise of his lawful discretion, pronounces the sentence at once, and the very next day new evidence is discovered, which, if produced on the trial, would have entitled him to a verdict of acquittal, would it be claimed for a moment that he was barred from moving for a new trial before the same court, and exhibiting his affidavits to show the evidence discovered in order that the fact as to whether or not he

had any good grounds for a new trial might be determined a
And if he could not make his motion before the court passing.
the sentence, what tribunal could he apply to ? The Supreme
Court will only act upon judgments rendered in the Circuit
Courts, and will not examine facts until they are found to be
true by an inferior court. Therefore, if the newly discovered
facts are to be examined and passed upon at all, they must be·
passed upon by the Circuit Court.

It was claimed in the argument that the granting of a new
trial after the sentence is without precedent, in any court of
competent jurisdiction to grant new trials. But it was not
shown that a new trial was ever refused for that reason under a
statute like ours, and therefore it is fair to presume that a refus-
al to hear the motion would be equally without precedent. Pre-
cedents are established when the necessities of justice require
them, and are followed for the same reason. *But a plain provis-
ion of the statute requires no precedent to give it effective force*, and
the objection to the entertaining of the motion for this reason
is not well founded.

2. Does it require the personal attendance of the prisoner
in court before the motion can be heard ? I think not. When
the motion to be heard is by the attorneys for the prisoner, and
is designed for his benefit, and cannot injuriously affect his
rights, I see no good reason why the prisoner should be requir-
ed to be present in court.

3. Has the defendant waived his right to be heard on this mo-
tion by not interposing this motion before sentence ? The rules
of practice require that when a special motion is made, the rea-
son upon which it is founded shall be set forth. When the
prisoner was sentenced the 2d, 6th, 7th and 8th reasons set
forth were unknown to him or his counsel, and therefore could
not have been heard upon any motion for a new trial, made at,
the time. Under section 6,082, already quoted, he was entitled to
wait and pursue his efforts to discover more testimony until the
the last day of the present term before making his motion,
even though he had discovered all the facts mentioned in the
motion before the sentence was pronounced.

The next question is whether the reasons set forth in the motion are all, or any of them true.

1. Was the verdict against the evidence in the case and law applicable thereto!

I find from the proceedings of the case, the statement of the Prosecuting Attorney in opening the case to the jury, and the evidence produced on the trial, that in order to establish the hypothesis of the prisoner's guilt with sufficient certainty to warrant a conviction for murder in the first degree, the following evidential facts should have been established in evidence beyond all reasonable doubt:

1. That Herbert Field was murdered by some one.

2. That he was murdered in the Bank of Manistee, between the hours of 11 a. m. and 12 m., on the 5th of September last.

5. That the defendant had sufficient motive for, and an opportunity, of killing Field at that same time and place.

4. That the defendant had the means wherewith to convey the body to the mouth of the Manistee River and anchor it there.

5. That the currents of Lake Michigan took the anchored body from the mouth of the Manistee River to a point on the shore of Lake Michigan twenty miles below.

6. That the defendant attempted to destroy evidences of the murder under circumstances which precluded to a reasonable certainty the probability of his being ignorant of their being such.

The first of these evidential facts I find was clearly established by the proofs.

Upon the second, I find the preponderance of evidence was against the hypothesis that the murder was committed at the Bank of Manistee between the hours of 11 a. m. and 12 m., on the 5th day of September last.

Upon the third, I find the motive or apportunity to kill Field at that time was not proven beyond all reasonable doubt.

Upon the fourth, I find there was no evidence to show that the prisoner had any means of conveying the body from the bank to the mouth of the Manistee River, and I find further

that there is a reasonable doubt of his being able to take the body from the bank to the mouth of the Manistee River and anchor the same and return during the time elapsing between the time he left home and the time he called at Dr. Fisher's.

Uupon the fifth, from the perfect preservation and unabraded condition of the boty when found, and the testimony of the physicians as to the time it had been exposed to air, I find there are grave doubts as to the current oj Lake Michigan having taken the anchored body from near the mouth of the Manistee River to the point where it was found.

And upon the sixth evidentiary fact I find that there is no evtdence to show that the property destroyed was of any particular value to the prisoner, or to show that there were evi-- deñce of crime upon it.

I theretore find from a careful consideration of the pleadings and the whole evidence in the case, that there is not only a *reasonable doubt of the prisoner's guilt, bnt of a fair presumtion of his innocence*, and that the verdict was against the evidence in the case and the law applicable to the case.

Upon the second reason set forth in the motion, I find that there is no affidavit on file indicating that the matters contained in the affidavits of Mary Loyd and Mrs. Hagadorn were newly discovered, and for that reason they cannot be taken into consideration. The reception and consideration of the affidavits of Embree Lott, Wilber F. Lott, and Edward Hall, is objected to by the prosecution, for the following reasons :

1. That thsy are not supported by the affidavit of George Vanderpool, alleging that the statements thereit contained were unknown to him at the time of the trial.

2. That they are merely cumulative.

As to the first point, I do not consider the affidavit of the prisoner indispensable to reasonably establish the fact that the evidence offered was unknown to him at the time of the trial. He appears to have gone into custody on the Wednesday after the disappearance of Field, and to have been closely confined ever since, and he is now in the penitentiary in execution of the sentence imposed upon him. His affidavit could only be

obtained by the special favor of the officers having him in charge, which might or might not be obtained. His counsel show by their affidavits that they were employed at an early day, and that the evidence was unknown to them at the time of the trial, and they believe it to have been unknown to the prisoner. While in motions for the new trial the affidavits of the prisoner is desirable it is not always indispensable, and in this case is sufficiently excused. I, therefore, find the fact to be that the evidence offered by the three last named persons is newly discovered, and was unknown to the defendant at the time of the trial; of its materiality, there is and can be no question. If Field was alive as late in the afternoon of the 5th of September last as indicated in the testimony contained in these affidavits, then the innocence of the prisoner would be, and must be, clearly established.

But is this evidence cumulative, and therefore inadmissible? I think not. The prosecution, on the trial of this cause, made it an issue that Herbert Field was murdered in the bank between the hours of 11 and 12 a. m., on the 5th of September last. To meet this issue, the defendant produced witnesses to prove that the bank door was open in the afternoon of that day, from which it was inferred that Herbert Field was still alive, and other witnesses who testified that they saw Field in the streets on the afternoon of that day at designated times and places. In respect to the evidence that the bank door was open, the testimony of witnesses who saw Field in the afternoon is clearly not cumulative in the sense in which that word is used in law. They are all facts which tend to destroy the proposition that Field was murdered before noon; but these facts are of a different kind, and cumulative evidence is denied to be additional evidence of the same kind, though I should define it to be a surfeit of evidence on a particular point, as with this definition the rules requiring its exclusion agree more with reason and justice than with the other. In reference to the testimony of Mrs. Springer and others, who testified that they saw Field in the afternoon, it is not cumulative, for they saw him

at a different place and at a different hour, the facts are different, although they establish the same conclusion, viz.: that Field could not have been murdered before 12 p· m. of that day.

In the case of Chatfield *vs.* Lothrop, 6 Pick., 417, cumulative evidence was defined to be such as tends to support the same fact which was before attempted to be proved. The evidence offered not being of the same fact, but or a different fact with the same logical bearing, under this definition, cannot be considered as cumulative.

But under this definition the rule that a new trial will not be granted on merely cumulative evidence; is not of universal application. Such evidence will not be refused if it will make a doubtful case clear. G. and W. on new trials, 1,063, and this evidence, if found true (and being uncontradicted and not incon sistent in itself for the purpose of a motion for a new trial, it must be taken as true), must have precisely that effect.

This newly discovered evidence will make plain that which was doubtful before, and to neglect it in such a case would be grossly contrary to the ends of justice, whose rules are as much established for the protection of the innocent as for the punishment of the guilty.

Upon reading the affidavits of Messrs. Fowler and Ramsdell as to the conduct of George D. Phibbs, I find the facts set forth in the third reason to be true, and upon reading the affidavits of Mr. Fowler and Mr. Ramsdell concerning the witnesses Wilcox and Adams, I find the facts set forth in the fourth reason to be true.

Upon the fifth reason stated in the motion, I find that after the jury were sworn, the prosecuting attorney proceeded to read the information and state the case to the jury, in which statement, among other things, he informed the jury he should be able to prove that on the Wednesday after the 5th day of September last, large spots of blood stains overspread with ink were found upon the bank floor. I find further, that afterward and during the early part of the trial, one David D. Ingram, without the knowledge of the Court, did clandestinely bring

THE PEOPLE v. GEO. VANDERPOOL.

into the court room, and hang upon the wall at the left and rear of the judge, and at the right and front of the jury, and in full view of the whole panel, a diagram purporting to represent the interior of the bank on Wednesday, the 8th of September last, and among other things, to represent the large spots of ink covered blood-stains mentioned by the prosecuting attorney as having been found upon the floor of the bank on that day, to which diagram the prosecution called the attention of the jury by asking the said Ingram if the diagram was an accurate representation of the interior of the bank on the 8th of September, and which diagram was calculated to convey to the minds of the jurors false impressions and ideas unfavorable to the defendant; for the reason that I find from the evidence of Dr. Duffield, who examined those spots with a thousand-power microscope, that there were no blood stains found upon the surface of the floor under the ink spots that were found thereon.

Upon the sixth reason, on reading and considering the affidavits of Simeon Anderson and James M. Allen, I find the statements contained in said reason to be true.

Upon the seventh reason, I find from the affidavit of E. E. Benedict that the names of four of the jurymen who composed the panel that tried the said defendant were not on the assessment roll of any township or ward in the County of Manistee for the year 1869.

On the part of the defense, it is insisted that one of the requisite qualifications of a juror is that his name shall appear on the assessment roll for the same year; that this provision is a *quasi* property qualification; that the defendant has an indefensible right to be tried by a jury solely selected from that class whose names are upon the assessment roll. On the part of the people, it is maintained that this provision of the statute requiring jurors to be taken from names on the assessment rolls is merely directory, and a disregard for it is not an error; and, also, the order of the Court commanding the sheriff to summon one hundred good and lawful men, was substantially complied with when he summoned one hundred men irrespec-

tive of their names being upon the assessment rolls; and that a jury drawn from that number are not objectionable because their names did not appear.

The first question is, what constitutes a lawful juror? The statute in reference to the return of jurors says: "The said officer shall proceed 'to select' from the persons assessed on the assessment roll of the township or ward, for the same year suitable persons having the qualifications of electors, to serve as jurors," etc. It afterward says, that in making such selection they shall take the names of such only as are not exempt, etc.

The statutory provision directs the officers from what source they are to obtain the names of jurors, and that in making their selection from that source they are to use care in selecting good men. They have no discretion as to where they shall obtain the names of the jurors to be returned, and can only use their discretion as to the particular names to be selected from that source. I do not consider that it becomes important to discuss the reason of the statute; it is sufficient that it exists. The term lawful persons, used in the order of the Court, can refer only to persons possessing the qualifications of jurors regularly summoned. The defendant has a right to demand the extension of its full requirements, and if the officers of the law fail to do this, it is an error. I consider the reasoning of the Supreme Court in the case of *Hill vs. The People* 16 *Michigan* Reports, in reference to aliens as jurors, of equal pertinence and force in this case. The provision of the statute is inexorable, and cannot be ignored by the people or waived by the defendant.

Upon the eighth and last reason contained in the motion, from the affiavit of James M. Allen, Robert Green and T. J. Ramsdell, I find there are reasonable doubts as to the qualifications of the said Robert Green to sit as a juryman on the trial of said cause.

Therefore, in consideration of the whole matter, presented to the Court for examination on the motion before me, and the argument of counsel on the same, it appears to the Court that on the trial and conviction of the said defendant, George Van-

derpool, for the murder of Herbert Field, in the Bank of Man-
istee, on the fifth day of September last, *that justice has not been
done*, and that the verdict against the defendant and the judg-
ment and sentence pronounced and passed thereon was *unjust
to the defendant and erroneous in law*, and that the said verdict
ought to be set aside and the jugment and sentence pronounced
and passed thereon, annulled and held for naught, and a new
trial accorded to the defendant.

It is therefore ordered and adjudged that the verdict ren-
dered against the defendant in this Court, on the 25th day of
February last. be, and the same is hereby set aside, and the
judgment and sentence pronounced and passed thereon against
the defendant, George Vanderpool, be, and the same is hereby
fully vacated, annulled and held for naught.    And it is further
ordered and adjudged that the said defendant, George Vander-
pool, be tried anew upon the information filed against him in
this Court.